IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable R. Brooke Jackson

Civil Action No. 10-CV-0824-RBJ-MEH

FIRST AMERICAN MORTGAGE, INC.,

Plaintiff,

v.

FIRST HOME BUILDERS OF FLORIDA;
K.HOVNANIAN FIRST HOMES, LLC;
FIRST HOME TITLE, INC;
BUILDERS MORTGAGE COMPANY, LLC;
FIRST MORTGAGE LENDERS OF FLORIDA, LLC;
D'ALESSANDRO & WOODYARD, INC;
GATES, D'ALESSANDRO &WOODYARD, INC.;
PATRICK LOGUE, an individual; and
JAMES SUBLETT, an individual.

Defendants.

## ORDER ON ALL PENDING MOTIONS TO DISMISS

On October 20, 2004 plaintiff First American Mortgage, Inc., a Colorado corporation,

entered into a contract with First Home Builders of Florida ("FHBF"), a Florida general

partnership, entitled "Construction Loan Agreement." The contract recites that First American is

a wholesale servicing and loan disbursement company for a network of licensed construction

mortgage lenders denominated the "Construction Lenders". FHBF was, at that time, a builder of

new homes in Florida.

According to plaintiff's Second Amended Complaint, FHBF wished to provide turnkey

services (home building, mortgage lending, real estate, title insurance) to potential home buyers

in a booming southwest Florida real estate market. The gist of the Construction Loan Agreement

was that the Construction Lenders would provide construction financing for homes to be built; plaintiff would act as the lenders' loan servicing agent; and FHBF would locate qualified buyers and provide certain assurances that the construction loans would be repaid. The parties agreed to submit any dispute arising out of or relating to the contract to the jurisdiction and laws of Colorado.

In October 2005 K. Hovanian First Homes, LLC ("KHFH"), a Florida limited liability company, acquired FHBF and took over FHBF's position in the Construction Loan Agreement. Beginning in late 2005 and increasingly thereafter, maturing loans were not being paid, and extensions were being requested and granted. KHFH made timely interest payments on the loans, except for one temporary period, through February 2009. Plaintiff alleges that KHFH then defaulted on its obligations under the Construction Loan Agreement.

Plaintiff further alleges that, unbeknownst to it, FHBF, KHFH and affiliated entities had engaged in a fraudulent scheme designed to "improperly and illegally extract funds from Plaintiff and various Lenders to support their businesses." Second Amended Complaint ¶41. The essence of the alleged scheme was that the defendants marketed homes to unqualified buyers who were recruited with promises that when the homes were built, they could be rented to "ready-made" tenants, allowing the buyer/investor to realize a 14% rate of return with no cost other than a minimal down payment. This caused prices of the homes to be artificially inflated, resulting in higher profits to the defendants than if the homes were sold to "first time" buyers as represented to the plaintiff. Plaintiff alleges that it and the Construction Lenders were left with worthless security and large losses when the housing market collapsed and many of the buyers defaulted on their construction loans. Second Amended Complaint ¶¶38, 72-75.

Plaintiff filed the present lawsuit in April 2010, claiming (1) breach of contract by FHBF and KHFH; (2) breach of the implied covenant of good faith and fair dealing by FHBF and KHFH; (3) fraud by misrepresentation against those two entities; two allegedly affiliated Florida mortgage companies, First Mortgage Lenders and Building Lenders: and two Florida residents who were general partners of FHBF; (4) fraud by concealment against the same group of defendants and an allegedly affiliated Florida title insurance company, First Home Title; (5) aiding and abetting fraud against the latter group of defendants; and (6) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U S.C. §1961 et seq. ("RICO") against the same group of defendants and a Florida real estate firm and its alleged successor in interest.

The motions addressed in this order seek dismissal either for lack of personal jurisdiction or failure to state a claim.  I will address the motions in the order in which they were filed.

### Gates, D'Alessandro & Woodyard, Inc.'s Special Appearance and Renewed Motion to Dismiss for Lack of Personal Jurisdiction (#121)

Plaintiff alleges that in 2003 FHBF, its principals Patrick Logue and James Sublett, and a Florida real estate company, D'Alessandro & Woodyard, Inc. ("DW") "devised a scheme to defraud Lenders into believing that the demand for KHOV homes was generating literally hundreds of *qualified* Buyers into KNOV's sales office every week when in fact this was not the case."  Second Amended Complaint ¶45.  "KNOV" is an acronym used by plaintiff with reference to FHBF and its successor KHFH collectively.  Plaintiff alleges that DW then participated in marketing efforts to implement the scheme.  *Id.* ¶¶46-48.

In July 2006 DW entered into a transaction with another Florida estate company, Gates McVey, the result of which was the creation of Gates, D'Alessandro & Woodyard, Inc. ("GDW").  Plaintiff alleges, based upon contemporaneous press releases, that the transaction was

a merger or de factor merger, and that GDW became the successor in interest to DW.  Second Amended Complaint ¶12.

The only claim asserted against DW and GDW in this case is the RICO claim set forth as plaintiff's Sixth Claim for Relief.  Plaintiff alleges that DW, GDW and the other named defendants formed an association or "enterprise" to generate funds from the construction and sale of houses and pursued the enterprise through a pattern of racketeering activity.  *See* Second Amended Complaint ¶¶107-118.  The only specific allegation regarding GDW in the Sixth Claim is that DW and GDW "earned real estate broker fees associated with purchase of homes by buyers."  *Id.* ¶114(d).

GDW moves to dismiss for lack of personal jurisdiction.  In support of its motion it submits the affidavit of Todd Gates, a managing member of a grandparent company.  Mr. Gates states that GDW was formed to purchase the real estate business assets of DW; that GDW (perhaps he means the Gates family) had no prior connection to DW or its principals; that GDW did not assume any obligations or liabilities of DW; and that DW continues to exist and operate to this day.  Gates Aff. ¶¶9-17.  Mr. Gates also states that neither DW nor GDW has ever transacted any business outside the state of Florida or had any contacts whatsoever with Colorado.  *Id.* ¶2-8.  Given the distinction between the entities that he emphasizes, the source of his personal knowledge about DW's lack of contacts with Colorado is not clear.

In response plaintiff submits the affidavit of Shaun Jordan, its Vice President of Operations.  Mr. Jordan states it is his "understanding" that GDW is a successor to DW.  *Id.* ¶5. The basis for that understanding is not provided.  He adds that "D'Alessandro & Woodyard and/or Gates, D'Alessandro & Woodyard" received brokerage commissions from transactions consummated under the Construction Loan Agreement for services provided on behalf of FHBF, and that at least one transaction involved a home buyer who resided in Colorado.  *Id.* ¶ 6-8.

Conclusions

First, it is important to distinguish between a motion to dismiss for lack of personal jurisdiction and a motion to dismiss for failure to state a claim. The dispute about whether GDW is the successor to DS relates to the latter. The RICO claim against GDW as set forth in the Sixth Claim for relief is vague and conclusory at best. GDW's exposure, if any, is based on its alleged liability for the acts of DW. The plaintiff has at least alleged a plausible RICO claim against DW by claiming that DW intentionally participated with others in a fraudulent scheme to profit at the expense of the construction lenders. The successor liability issue is not before the Court on the jurisdictional motion.

The jurisdictional issue was succinctly summarized by the Tenth Circuit in *Peay v. Bellsouth Medical Assistance Plan,* 205 F.3d 1206 (10th Cir. 2000): "Before a federal court can assert personal jurisdiction in a federal question case, the court must determine "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'" *Id.* at 1209. This Court need only consider the second those questions, because GDW has not contested plaintiff's contention that RICO's nationwide service of process provision, 18 U.S.C. §1965, satisfies the first requirement.

As to the second requirement, the court in *Peay* held that "in a federal question case where jurisdiction is invoked based on nationwide service of process, the Fifth Amendment requires the plaintiff's choice of forum to be fair and reasonable to the defendant." 205 F.3d at 1212. "The burden is on the defendant to show that the exercise of jurisdiction in the chosen forum will 'make litigation so gravely difficult and inconvenient that [he] unfairly is at a severe disadvantage in comparison to his opponent.'" *Ibid.* The court set forth five factors that the trial

court should consider in determining whether the defendant has met that burden.  This Court makes the following findings with respect to those factors:

1.  <u>Defendant' contacts with the forum state</u>.  The Gates affidavit states that GDW has never done business in or had other contacts with Colorado.  Nothing in the Second Amended Complaint or the Jordan affidavit suggests otherwise.  However, in a federal question case where the statute provides for nationwide service of process, traditional "minimum contacts" with the forum state are not constitutionally required.  *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 946-47 (11th Cir. 1997)(cited with approval in *Peay*).

2.  <u>Inconvenience to the defendant</u>, taking into consideration the nature of the defendant's business, access to counsel, and distance from the forum.  GDW is not an interstate business.  It will be inconvenient and probably more expensive for a Florida-based defendant to defend a case of this complexity in Colorado.  GDW does, however, have competent counsel who appears to be fully capable of defending a case in Colorado if necessary.  Modern day transportation and communication decrease the inconvenience of litigating in a distant forum.  *Peay,* 205 F.3d at 1213.

3.  <u>Judicial economy</u>.  Judicial economy is best served by having all related disputes resolved in one case.

4.  <u>Probable situs of discovery proceedings</u>.  There inevitably will be documents and witnesses in both states.  However, because all of the defendants are Florida based, and the alleged scheme was hatched and pursued in Florida, it appears to be more likely that more of the discovery will occur there.  Electronic discovery, while sometimes expanding

the scope and cost of civil litigation, can also be a means of reducing the impact of litigating from a distant location.

5. <u>Nature of the regulated activity</u>.  Whether litigation in Colorado will have a negative impact on GDW's real estate is a subject that neither party has addressed.

At bottom, to pass constitutional muster, the court must be satisfied requiring GDW to defend itself in this Court will not impose an undue burden.  The Tenth Circuit, quoting *Republic of Panama,* stated:  "'We emphasize that it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern.'"  *Peay,* 205 F.3d at 1212.  Having considered the five factors set forth above, I conclude that this is not that highly unusual case.  There is no evidence or suggestion that GDW lacks the wherewithal to defend itself in Colorado or that litigating in Colorado will be more inconvenient than the inconvenience any party would experience from litigating outside its own state.

<u>Order</u>

GDW's motion to dismiss for lack of personal jurisdiction is denied.

**Defendants James E. Sublett's and Patrick Logue's Motion to Dismiss for Lack of Personal Jurisdiction (#134)**

Plaintiff alleges that Messrs. Sublett and Logue, both of whom are Florida residents, were officers and general partners of FHBF at all times material to this case.  Second Amended Complaint ¶¶6, 7.  As indicated above, plaintiff alleges that these gentlemen, together with FHBF and DW, devised a scheme to defraud lenders into believing that there was a heavy demand for new homes by qualified buyers.  *Id.* ¶45.  They and others are alleged to have concealed the existence of "mystery agreements" which negated FHBF or KHFH's obligation to the buyer to satisfy the construction loans in the event of a buyer default.  *Id.* ¶63.

Plaintiff asserts that Messrs. Sublett and Logue committed fraud by intentionally (1) misrepresenting the qualifications and that FHBF or KHFH would take steps necessary to extinguish the construction loans if buyers defaulted, and (2) concealing that the homes were intentionally being marketed to low and middle income persons, and that they were promising ready-made tenants and a 14% rate of return. *Id.* ¶¶86, 94. They also aided and abetted the fraudulent activity of the other defendants. *Id.* ¶103. Finally, plaintiff alleges that those fraudulent acts support a RICO claim against the two individuals. In additional support for that claim, plaintiff alleges that "Logue and Sublett, as holders of top-level executive positions within FHBF, received compensation from this entity for the loans being funded." *Id.* ¶114(e).

In support of their motion to dismiss for lack of personal jurisdiction, Messrs. Logue and Sublett submit substantively identical affidavits stating that they were not partners of FHBF. Rather, the partners of FHBF were J.S.U.B., Inc. and Logue Enterprises. Affidavits ¶4-5. They further state that they did not conduct business in Colorado, *id.* ¶6, and that traveling to Colorado for proceedings in this case would be a personal hardship. *Id.* ¶7.

In support of its response to the motion, plaintiff submits the affidavit of Jeffrey Jordan, plaintiff's Chief Executive Officer from 1998 through 2007. He states that in his business dealings with representatives of FHBF, he was advised that Messrs. Sublett and Logue were the principals and owners of FHBF.

<u>Conclusions</u>

Applying the five-part *Peay* test, the Court finds:

1. <u>Defendants' Contacts with the Forum State.</u> While defendants might not have conducted business in Colorado personally, they are alleged to have been principles and owners of FHBF. In the context of a motion to dismiss for lack of personal jurisdiction, factual

disputes in conflicting affidavits are resolved in the plaintiff's favor.  *Wenz v. Memery Crystal,* 66 F.3d 1503, 1505 (10th Cir. 1995).  FHBF consented to the jurisdiction of Colorado's courts as to any dispute arising out of or related to the Construction Loan Agreement.  Messrs. Sublett and Logue presumably knew, therefore, that they might become involved in litigation in Colorado.  Moreover, they are alleged to have participated in acts of fraudulent misrepresentation and concealment.  Even under traditional "minimum contacts" analysis, the commission of an intentional tort that in some way is aimed at and causes damage to entities located in Colorado can be sufficient constitutionally to subject the alleged tortfeasor to the jurisdiction of Colorado courts. *D&D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 525 (Colo. 1989).  *See also Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077-79 (10th Cir. 1995).

2.  <u>Inconvenience</u>.  In their affidavits Messrs. Sublett and Logue indicate that defending this case in Colorado would be a personal hardship.  It is difficult to disagree with that somewhat vague statement.  On the other hand, they surely will be involved in the case whether or not they are parties.  Moreover, they are represented by the same large and reputable Florida and Colorado law firms that are jointly representing FHBF and KHFH.

3.  <u>Judicial economy</u>.  This always favors litigating all claims in one forum.

4.  <u>Discovery</u>.  As indicted above, it appears likely that a substantial portion of the discovery in the case, including any depositions or document requests requested of these individuals, will occur in Florida.

5.  <u>Nature of the regulated activity</u>.  The activity in question includes the business relationship established by these individuals with Colorado lending institutions.

The Court concludes that it would not be constitutionally unfair or unreasonable to expect

Messrs. Sublett and Logue to defend this case in Colorado.

Order

The motion to dismiss for lack of personal jurisdiction is denied.

**K. Hovnanian First Homes, LLC and First Mortgage Lenders of Florida, LLC's Motion to Dismiss the Second Amended Complaint (#136)**

These two defendants move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6)

for failure to state a claim on which relief can be granted.  The standard of review for such a

motion was aptly described by Judge Babcock as follows:

> When deciding a motion to dismiss under Rule 12(b)(6), the court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.  *Alvarado v. KOB-TV, L.L. C.,* 493 F.3d 1210, 1215 (10th Cir. 2007); *David v. City & County of Denver,* 101 F.3d 1344, 1352 (10th Cir. 1996).  "In doing so, we ask whether there is plausibility in the complaint.  The complaint does not need detailed factual allegations, but the factual allegations must be enough to raise a right to relief above the speculative level." *Hall v. Witteman,* 584 F.3d 859, 863 (10th Cir.2009)( *citing Christy Sports, LLC v. Deer Valley Resort Co.,* 555 F.3d 1188, 1191 (10th Cir. 2009)).

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* ---U.S.----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability and, likewise, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, in evaluating a dismissal under Fed. R. Civ. P. 12(b)(6), the court first "identif[ies] the [conclusory] allegations in the complaint that are not entitled to the assumption of truth," and then "consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951; *Hall v. Witteman, supra.*

In short, the allegations of fact in the complaint, excluding purely conclusory

allegations, are accepted as true and construed in the plaintiff's favor for purposes of a

motion to dismiss for failure to state a claim.

Breach of Contract Claim

KHFH contends that plaintiff lacks standing to assert a claim for breach of the Construction Loan Agreement.  Under the terms of that agreement, "Construction Lenders," but not plaintiff, provide the construction financing.  Therefore, KHFH argues, only those lenders can arguably meet the requirements for standing of "(1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision."  *Utah ex rel. Div. of Forestry v. U.S.,* 528 F.3d 712, 720-21 (10th Cir. 2008).

I agree in part.  Losses on loans directly made by plaintiff to buyers fall outside the scope of the agreement.  The affidavit from Shaun Jordan in which he states that FHBF knew that plaintiff was acting as both a servicing agent and a Construction Lender does not change the terms of the agreement.  The affidavit is, in any event, outside the scope of the Second Amended Complaint and therefore irrelevant to a response to a motion to dismiss for failure to state a claim.

However, the agreement provides in paragraph seven that "[i]t is the intent of FHBF that neither FHBF nor FAM (the plaintiff here) or the Construction Lenders realize a loss on a Home or Construction Loan as the result of a breach, default or failure by a Buyer."  KHFH does not dispute that it is the successor to FHBF.  Plaintiff alleges that it has been sued by lenders, implicitly as a result of buyer defaults and KHFH's failure to honor guaranty terms of the Construction Loan Agreement; that it has repurchased several construction loans on which buyers have defaulted; and that it has suffered losses on more than 100 loan files.  Second Amended Complaint ¶¶73-75.  Construing these allegations in plaintiff's favor for purposes of a

motion to dismiss, the Court finds that they set forth injuries caused by KDHF's alleged breach that would be redressed by a favorable decision

KHFH also contends that plaintiff fails to address an addendum to the contract that negates the breach of contract claim.  This addendum, as construed by KHFH, states that the parties did not intend that the Construction Loan Agreement be construed as a guaranty that FHBF would purchase or pay off construction loans in the event of a default.  The addendum does not necessarily negate the term providing that the parties' intent was that plaintiff not suffer a loss as a result of a "breach, default or failure by a Buyer."  There are potential inconsistencies and ambiguities in the agreement, as supplemented, that may well require extrinsic evidence of the parties' intent and ultimate construction by the Court.  This is not the time for that process.

The Court finds that, with the exception of the losses allegedly sustained as a result of loans directly made by the plaintiff, the Second Amended Complaint states a claim for relief for breach of the Construction Loan Agreement on which relief could be granted.

Breach of the Implied Covenant of Good Faith and Fair Dealing

As provided in the Construction Loan Agreement, Colorado law provides the substantive law with respect to this claim which arises out of the agreement.  A covenant of good faith and fair dealing is implied in every contract.  *Amoco Oil Co. v. Ervin,* 908 P.2d 493, 499 (Colo. 1995).  It applies when a party has discretionary authority with respect to an express term of the contract.  The discretion cannot be exercised in a manner that defeats the reasonable expectations of the parties to the contract.  *Id.* at 498-99.

As indicated above, one express term of the agreement was that FHBF intended that plaintiff would not realize a loss on a home or a construction loan "as the result of a breach, default or failure by a Buyer."  Construction Loan Agreement ¶7.  The agreement provides

among other things that FHBD will take reasonable steps to assure that homes are sold to qualified buyers; monitor the buyers' qualifications during the construction process; and prepare buyers for the permanent loan closing. Construction Loan Agreement ¶¶ 1, 2. The agreement permits FHBD to take possession of a home that is subject to a construction loan if a buyer breaches a term of the loan. *Id.* ¶3. Second Amended Complaint ¶22(b). The same paragraph that expressly provides that FHBF intends that plaintiff not realize a loss adds that FHBF "will take steps to orchestrate solutions to problems and maintain our record of satisfactory construction loans." Construction Loan Agreement ¶7. These terms vest discretion in FHBF. That discretion may not be exercised in a manner that defeats plaintiff's reasonable expectations under the agreement. The Court finds and concludes that plaintiff has sufficiently stated a claim against KHFH for breach of the implied covenant.

Fraud

KHFH and First Mortgage Lenders both argue that the fraud claims (Third, Fourth and Fifth Claims for Relief) are not stated with the particularity required by Fed. R. Civ. P. 9(b). I disagree. The allegations against KHFH and its predecessor FHBF set forth in paragraphs 45 through 70 and 86 of the Second Amended Complaint, collectively, describe the nature of the alleged scheme and the general nature of the alleged misrepresentations and concealments that are supposed to have occurred in connection with the scheme. Defendants remind me, and I agree, that alleging fraud is a serious matter. One must bear in mind, however, that plaintiff is a loan service company with no evident involvement in the activities that allegedly made up a scheme hatched and carried out in Florida. It is not surprising that plaintiff has not set forth specific facts in detail in the complaint. The fraud paragraphs stand in contrast with the RICO allegations in the Sixth Claim. There, absent incorporation of the fraud paragraphs against these

two defendants, the allegations would be too vague and conclusory to merit the presumption of truth. The Court concludes that there is sufficient particularity vis-à-vis KHFH to withstand a Rule 9(b) defense.

The allegations regarding First Mortgage Lenders are less fulsome that those regarding FHBF and KHFH. I agree that the allegations regarding First Mortgage Lenders' affiliation with FHBF and KHFH, such as that it shared office space and worked closely with KHFH, are not indicative of fraudulent conduct. Likewise, allegations that First Mortgage Lenders and Builders Mortgage Company assisted buyers in preparing loan documents to be presented to plaintiff and the construction lenders, Second Amended Complaint ¶¶51-52, are not indicative of fraudulent conduct. However, plaintiff does allege that First Mortgage Lenders intentionally and with intent to deceive plaintiff and the construction lenders omitted the "Mystery Agreement" from the construction loan documents. *Id.* ¶63. The "Mystery Agreement" supposedly was a written that can be read as negating FHBF/KHFH's obligation to satisfy the construction loans in the event of a buyer default. *Ibid.* This concealment was done to facilitate the sale of homes through loans provided by plaintiff and the Construction Lenders. *Id.* ¶94. That is a slender reed on which to base a fraud claim, and plaintiff would certainly have to have more than that, after disclosures and discovery, to withstand a motion for summary judgment. However, for purposes of a motion to dismiss for failure to state a claim, it is sufficient.

These defendants also contend that plaintiff has not alleged that it has sustained an actual as opposed to a possible future injury, because plaintiff has not alleged that it has tried but failed to foreclose on the properties and to collect deficiencies from the borrowers. Again, I disagree. Plaintiff has alleged that it has sustained actual damages as a result of the alleged fraud. Second Amended Complaint ¶¶72-75. Whether the security has value, whether deficiency claims

against the defaulting borrowers have value, and the extent to which, if at all, plaintiff can prove

actual damages are not appropriate issues for resolution on a motion to dismiss for failure to state

a claim.

RICO

Plaintiff alleges in its Sixth Claim for relief that the same scheme among the defendants

of which it complained in the previous claims also puts defendants in violation of three sections

of RICO: 18 U.S.C. 1962(b); 18 U.S.C. 1962(c); and 18 U.S.C. 1962(d).  Defendants contend

that plaintiff has not stated a viable legal claim under either section.  I agree in part.

Under 18 U.S.C. 1962(b) it is unlawful "for any person through a pattern of racketeering

activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly,

any interest in or control of any enterprise which is engaged in, or the activities of which affect,

interstate or foreign commerce."  Defendants argue that under this section, the enterprise must be

the victim, not the perpetrator, of the racketeering activity.  *See National Organization for

Women v. Scheidler,* 510 U.S. 249, 258-59 (1994).  Plaintiff has not responded to the argument.

I agree with the defendants.

Under 18 U.S.C. 1962(c), it is unlawful "for any person employed by or associated with

any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or

participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of

racketeering activity or collection of unlawful debt."  Therefore, plaintiff must allege that the

defendants "(1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of

racketeering activity."  *Tal v. Hogan,* 453 F.3d 1244, 1269 (10th Cir. 2006).

Plaintiff alleges that defendants' participation in the scheme that was the subject of the

fraud claims is the conduct of an "enterprise."  Under 18 U.S.C. 1962(c) the enterprise may be

the perpetrator, not the victim of racketeering activity.  Defendants do not argue otherwise.

Rather, they argue that plaintiff has not sufficiently pled a pattern of racketeering activity.

"Racketeering activity" is "any act which is indictable under federal law," including mail

fraud and wire fraud.  18 U.S.C. 1961(1)(B).  *See Tal,* 453 F.3d at 1261.  There must be at least

two predicate acts of racketing activity to form a pattern.  *Deck v. Engineered Laminates,* 349

F.3d 1253, 1257 (10th Cir. 2003).  Plaintiff has alleged multiple acts and has alleged that they are

indictable under 18 U.S.C. sections 1341 (mail fraud), 1343 (wire fraud) and 1344 (bank fraud).

Defendants' argument is that the predicate acts of mail, wire and bank fraud have not

been pled with sufficient particularity, incorporating the argument made with respect to the fraud

claims.  Defendants also repeat their argument that plaintiff has not pled actual damage, only the

possibility of a future loss.  For the reasons set forth above with respect to these arguments, I

disagree.  The Court finds that plaintiff has pled claims under 18 U.S.C. 1962(c) sufficiently to

survive a motion to dismiss for failure to state a claim.

Finally, with respect to 18 U.S.C. 1962(d), plaintiff alleges that defendants conspired to

violate 18 U.S.C. 1962(c).  In order to state this conspiracy claim, plaintiff "must specifically

plead Defendants agreed to commit a pattern of racketeering."  *Brooks v. Bank of Boulder,* 891

F. Supp. 1469, 1479 (D. Colo. 1995).  This does not mean that the defendants must have agreed

to commit what they knew to be a "pattern of racketeering."  Rather, there must be concerted

action among the alleged conspirators.  *Ibid.*  Here, plaintiff has alleged, loosely to be sure, that

defendants did set upon a common plan or scheme.

<u>Order</u>

The motion to dismiss is granted with respect to the breach of contract claim arising out of alleged direct loans by plaintiff.  The motion is also granted with respect to the RICO claim asserted under 18 U.S.C. 1962(b).  Otherwise, the motion is denied.

**Defendant First Home Title's Motion to Dismiss Second Amended Complaint (#139)**

First Home Title moves to dismiss both for failure to state a claim on which relief could be granted and for lack of personal jurisdiction.

First Home Title is or was a Florida title insurance company.  Plaintiff alleges that KHFH used First Home Title, which it claims to be a subsidiary or otherwise commonly owned, as its loan closing department.  Plaintiff asserts that FHBF used First Home Title to assist in the presentation of loan packages to it and to other Construction Lenders.  Second Amended Complaint ¶51.  As with First Mortgage Lenders, plaintiff alleges that First Home Title, with the intent to deceive plaintiff and the construction lenders, participated in concealing the "Mystery Agreement" in order to facilitate the sale of homes through loans provided by plaintiff and the Construction Lenders.  *Id.* ¶¶63, 94..  First Home Title allegedly aided and abetted fraud by submitting loan applications to plaintiff and the lenders that they knew to be false and deceptive.  *Id.* ¶102.  Finally, First Home Title is included with the other defendants in the conclusory allegations that make up the RICO claim.

In support of its motion to dismiss First Home Title submits the affidavit of an attorney, Michael W. Leonard.  He states that he and another gentleman, both of whom are Florida residents, were the sole officers of First Home Title at time relevant to this case.  He indicates that First Home Title surrendered its license in 2007.  According to Mr. Leonard, First Home Title had no business operations in Colorado at any time.  Leonard Aff. ¶¶13-14, 21.  He states

that he is not aware of meetings with plaintiff outside Florida, and he denies that First Home Title submitted construction loan applications to plaintiff.  Rather, First Home Title's only role was closing loans and sales.  *Id.* ¶¶16, 18.

Plaintiff counters with the affidavit of Shaun Jordan who states, as has been discussed earlier in this order, that FHBF was a "one stop shop," and that First Home Title provided FHBF's title services and prepared buyers for permanent loan closings.  S. Jordan Aff. ¶¶4, 5, 8. He states that he met with Mr. Leonard on two occasions, together with other representatives of FHBF affiliated companies; and that from November 2004 through December 2006 plaintiff's representatives communicated with First Home Title by telephone, email, and mail nearly daily in the course of doing business with FHBF.  Mr. Jordan discussed the title and closing portions of the Construction Loan Agreement with Mr. Leonard on multiple occasions.  *Id.* ¶¶10-12.

Conclusions

With respect to jurisdiction, the Court applies the five *Peay* factors:

1. Defendants' contacts with the forum state.  First Home Title appears not to have had business operations outside Florida, at least so far as the present record shows.  However, like First Mortgage Lenders, it is alleged to have participated in specific efforts to conceal the "Mystery Agreement" from plaintiff and the construction lenders.  Second Amended Complaint ¶¶63, 94.  More generally, it is accused of being a key participant in the scheme to defraud plaintiff.

2. Inconvenience.  There is no indication of inconvenience beyond that which naturally arises from defending litigation outside the home state.  First Home Title has competent counsel.

3. Judicial economy.  Again, this favors litigating all claims in one forum.

4. <u>Discovery</u>.  As indicted above, it appears likely that a substantial portion of the discovery in the case, including any depositions or document requests requested of Mr. Leonard or others associated with First Home Title, will occur in Florida.

5. <u>Nature of the regulated activity</u>.  The Leonard affidavit states that First Home Title surrendered its license in late 2007.  As such, it is difficult to evaluate the potential impact, if any, on its business operations.

There is nothing from which this Court could find that being required to defend the claims in Colorado federal court would impose a constitutionally undue burden on First Home Title.

As for the motion to dismiss for failure to state a claim, I first note that the affidavits are irrelevant in that context.  At this stage of the case, First Home Title is in the same position as First Mortgage Lenders in terms of the allegations regarding the particularity of the fraud allegations, its participation in the scheme allegedly orchestrated by FHBF and KHFH, and its consequent membership in an enterprise engaged in a pattern of racketeering activities.  There is enough to survive a Rule 12(b)(6) motion.  Whether those allegations hold up over the course of the litigation is an entirely different question.

<u>Order</u>

The motion to dismiss for lack of personal jurisdiction is denied.  The motion to dismiss for failure to state a claim is granted with respect to the RICO claim asserted under 18 U.S.C. 1962(b) but is otherwise denied.

**Motion to Dismiss by Builders Mortgage Company (#140)**

Builders Mortgage Company advances four arguments that combine jurisdiction and failure to state a claim.  Two of the arguments have been fully discussed as to other defendants.

With respect to lack of personal jurisdiction, and setting aside the argument that it no longer

exists as discussed below, Builders Mortgage's position is essentially indistinguishable from that

of First Mortgage Lenders.  The contacts are, so far as the Second Amended Complaint is

concerned, similar.  There is no indication of special inconvenience.  It is represented by

competent counsel.  There is nothing from which the Court could find that defending the case in

this Court would impose a burden or unfairness that would be inconsistent with due process.

With respect to Builders Mortgage's argument that the RICO claims have not been sufficiently

pled, I again disagree, except as to the claim under 18U.S.C. §1962(b).

Builders Mortgage's primary argument, however, is unique to it.  Builders Mortgage

contends that t it cannot be sued because it is a dissolved limited liability company.  It submits a

copy of its Certificate of Formation as a Delaware limited liability company on June 5, 2003; a

copy of a Certificate of Cancellation dated January 9, 2008; and an affidavit of Kimberly

Castiglioni, who states that Builders Mortgage is dissolved and has no assets.  Castiglioni Aff.

¶¶2, 5-7.  If the Court were to consider the facts in this affidavit and the documents for the truth

of what they assert, then it would convert the motion to dismiss into a motion for summary

judgment.  *See Tal,* 453 F.3d at 1265 n.24 (10th Cir. 2006).  Moreover, even if the Court accepted

the arguments that Delaware law determines Builders Mortgage's capacity to be sued, I would

have to consider whether it was dissolved in compliance with that law.  I decline to address these

issues on this motion to dismiss.

However, because the issue will likely arise again, the Court offers the following

comments for the parties' consideration.  A party's capacity to be sued is determined by Fed. R.

Civ. P. 17(b).  Builders Mortgage Company relies on Rule 17(b)(2), which provides that the

capacity of a corporation to be sued is determined by the law under which it was organized.

However, Builders Mortgage Company is not a corporation.  In *Model Board, LLC v. The Board Institute, Inc.,* 2009 WL 691891 (E.D. Mich. March 12, 2009), on which Builders Mortgage relies, the court was persuaded to apply Rule 17(b)(2) by a provision in Michigan law that gives limited liability companies "all powers granted to corporations."  There is no such provision in Colorado's act.  *See* C.R.S. §7-80-101 et seq.  In *The Herrick Group & Associates LLC v K.J.T., L.P.,* 2009 WL 2596503 (E.D. Pa. Aug. 20, 2009), on which Builders Mortgage also relies, the parties agreed on the applicable state law.  The fact is that a limited liability company, while like a corporation in many ways, is not a corporation.  I am inclined to the view that Rule 17(b)(3), providing that the capacity of all other parties to be sued is provided by the law of the forum, is applicable here.

Colorado law does not appear to address expressly whether a limited liability company may be sued after its dissolution.  However, as Builders Mortgage correctly notes, a foreign limited liability company is included within the definition of a "foreign entity" under Colorado law, C.R.S. §7-90-102(23); a "foreign entity" is the functional equivalent of a "domestic entity," C.R.S. §7-90-805(2); and a "domestic entity" includes domestic limited liability companies.  C.R.S. §7-90-102(13).  Colorado law provides that a claim may be pursued against a dissolved domestic entity.  C.R.S. §§7-90-911-13.  The parties will, at the proper time, need to address whether a claim may be pursued against a dissolved foreign entity as a functional equivalent.  The Court's concern is whether an alleged Colorado creditor's claim against a foreign limited liability company can be extinguished by operation of a cancellation process of which it might have had no notice.  The answer may be "yes," but I am not satisfied that the issue has as yet been fully developed in the parties' briefs.

Finally, Builders Mortgage argues that the fraud claims are barred by a three-year period of limitation.  Fraud actions must be brought within three years after the cause of action accrues. C.R.S. §13-80-101(1)(c).  The cause of action accrues on the date the fraud was discovered or should have been discovered by the exercise of reasonable diligence.  C.R.S. §13-80-108(3). Builders Mortgage argues that plaintiff should have discovered the fraud at least by February 2007 when it admits that it received a copy of the "Mystery Agreement."  Second Amended Complaint ¶64.  Plaintiff points to paragraph 53 of the Second Amended Complaint where it alleges that "[i]t was no earlier than November 2007 . . . that Plaintiff began learning of the scheme used to procure Buyers and induce the Lenders into making the Construction Loans."

A defense that a claim is barred by a statute of limitation is an affirmative defense that generally is not resolved on a motion to dismiss.  Only where the allegations of the complaint clearly show that the case was not brought within the applicable period may a court grant a motion to dismiss on that basis.  *See, e.g., Whitington v. Sokol,* 491 F.Supp. 2d 1012, 1014 (D. Colo. 2007); *Meyerstein v. City of Aspen,* 2011 WL 915747 (Colo. App. 2011).  This is not such a case.

Order

The motion is granted with respect to the RICO claim asserted under 18 U.S.C. 1962(b) but is otherwise denied.

DATED this 14th day of October, 2011.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge